# Hoover, Appellant, *v.* Jackson.

*Master and servant—Manager of real estate office—Absence from duty— Wages.*

A person who is employed at monthly wages as manager of a branch real estate office, and who has after notice to his employers and without objection on their part absented himself from his place of employment for a period of six weeks on a pleasure trip across the ocean, has no right on resuming his work to claim wages for the period covered by his absence. In such a case it is immaterial that he may have been allowed on several previous occasions to absent himself from his place of business for several days at a time on shooting trips, or on short visits to the seashore, without any reduction in his pay.

Argued Dec. 13, 1912. Appeal, No. 191, Oct. T., 1912, by plaintiff, from order of C. P. No. 4, Phila. Co., June T., 1907, No. 532, refusing to take off nonsuit in case of Maurice J. Hoover v. Joseph T. Jackson et al., trading as J. T. Jackson & Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit for salary. Before AUDENRIED, J.

At the trial the court entered a compulsory nonsuit.

Subsequently AUDENRIED, J., filed the following opinion:

Hoover claims from J. T. Jackson & Company $522 for three months' and four days' salary as manager of their Oak Lane real estate office, and $41.03 for money advanced on their account by way of office expenses, in all $563.03, less the sum of $318.80 received from them before suit was brought, the balance claimed amounting to $244.23, with interest.

At the trial it appeared that in July, 1903, J. T. Jackson & Company, who are engaged in the real estate business, and who had opened an office at Oak Lane for the sale of suburban properties, employed Hoover to take charge of their business at that office, agreeing to pay him $2,000 per annum by monthly installments of $166.66. Their agreement with him was made by word of mouth. Nothing was said then by either party on the subject of summer vacations or holidays.

Hoover's family went to Europe, and in February, 1905, the defendants were notified by him that in the following summer he would go abroad to join them. No objection being interposed by his employers to his taking this trip, he left Philadelphia on July 19, 1905, and did not return until about the middle of the following September. His wages up to the end of July had been paid him in advance before his departure.

On his return from Europe, Hoover resumed his work in the defendants' office at Oak Lane. They, however, refused to pay him salary for the time spent on his trip abroad. For this reason he abandoned his position on November 4, 1905, and subsequently, through his attorney, presented a claim on the defendants for $563.03, including therein sundry items for money advanced for office expenses, and an item of $522 for salary for three months and four days.

The defendants conceded that Hoover was entitled to be repaid his outlay of $41.03 for the office, and that salary was owing him for two-thirds of the month of September, the whole of the month of October, and for four days in

November, 1905. They denied his right to pay for the month of August and the first third of the month of September. A check was sent to Hoover's attorney for the sum of $318.80, which sum, it seems, slightly exceeded the amount of the items which it was intended to cover. After some negotiations, this check was accepted by Hoover upon the understanding that he was not to be precluded thereby from bringing suit to collect wages for the period for which the defendants denied their obligation to pay him anything.

The question raised on these facts is whether one who is employed at monthly wages, and has, after notice to his employers and without objection on their part, absented himself from his place of employment on a pleasure trip across the ocean has the right on resuming his work to claim wages for the period covered by his absence.

This question was treated by the trial judge as a question of law. In so doing, we think, he was right. The facts in evidence were not disputed. There was nothing for the jury to decide.

The case was disposed of by the entry of a judgment of nonsuit. This implies that the question above stated was decided in the negative. Was this decision erroneous? A careful search has failed to discover precedents exactly in point. We are of the opinion, however, that no error was committed in granting the defendants' motion for a nonsuit, and our reasons are as follows:

Wages primarily are compensation for the services of one person in the employ of another. Salary is but the Latin word for the same thing, although it is applied particularly to the higher wages commanded by persons of business ability or professional skill. Service is the basis of wages. Hence, where no service is rendered, normally, no wages are earned. An apparent exception exists when a man's time is engaged in anticipation of work to be done when needed or to prevent his employment by a third party. This, however, is no real exception to the rule, for "they also serve who only stand and wait." If, therefore,

one would have wages, he must perform service, or hold himself in readiness to perform service in his employment. That anyone shall be entitled to wages for a period when he does nothing and is not at hand ready to work can, in the absence of a general custom among persons engaged in the business in which he is employed, result only from express contractual provision on the subject.

In this case there was no evidence to show that in the suburban real estate business it is universally the custom in this vicinity for employers to give their employees ranking as managers of branch offices a vacation of two months in the summer at pay. It is admitted by the plaintiff that no such holiday was promised to him when he entered the defendants' employ. It follows, therefore, in our opinion that since Hoover, between July 18 and September 15, 1905, rendered no services to the defendants, and was not in a position to perform services if called upon for them by his employers, he was not entitled to salary during that period.

The silence of the defendants on the subject of the plaintiff's wages during his absence when he announced to them his intention of taking a European trip was no more significant than the silence of the plaintiff himself at that time on this topic. Their right to assume that he would not expect to draw wages during his absence from business on such a journey was at least as great as his to assume that they expected to part with their money in paying for time spent in his own enjoyment.

It is urged, however, that the plaintiff offered to show a course of dealings between himself and the defendants inconsistent with the above indicated conclusion as to their respective rights and duties under their contract, and that this evidence, erroneously rejected, would have justified the jury in finding that it was understood by both of these parties that the plaintiff might spend each summer several months in traveling abroad without losing his salary during the time of his absence. The facts that the plaintiff actually offered to prove were that he had not been tied

down to regular hours of work at his office, and that on a number of occasions he had been allowed to absent himself from his place of business for several days at a time on shooting trips or on short visits to the seashore, without any reduction in his pay. Such excursions, however, were very different matters from his trip to Europe in the summer of 1905. The difference was of one kind, not merely of degree. From Atlantic City or the neighboring counties in Delaware and Maryland he might easily have been recalled and brought back to his office in a day had circumstances rendered his presence there desirable. Such absences could not fairly be said to interfere with his readiness to render the service required of him by his contract of employment. To get him back promptly from beyond the seas would, however, have been difficult in the extreme. During his absence in Europe, Hoover performed no services, and could have performed none. We think that the defendants' easy dealings with the plaintiff in the matter of his hunting expeditions and his trips to the seashore afforded no basis whatever for the inference that there existed between them an understanding that he might take an annual trip across the ocean for two months at a time without losing his right to salary during his absence, and in our opinion the evidence offered under this head was properly excluded.

The motion to take off the nonsuit is dismissed.

*Error assigned* was order refusing to take off nonsuit.

*Francis G. Taylor,* for appellant.—Salary is not synonymous with wages: Com. v. Butler, 99 Pa. 535.

*Horace M. Rumsey,* for appellee.—A servant cannot recover for loss of service, under a contract, by reason of illness or absence, although he continues in said employment: Shaw v. Deal, 7 Pa. C. C. Rep. 379; Hunter v. Waldron, 7 Alabama, 753; McDonald v. Montague, 30 Vt. 357; Wilson v. Smith, 111 Alabama, 170 (20 So. Repr. 134).

OPINION BY MORRISON, J., February 27, 1913:

In this action of assumpsit, when the plaintiff rested his case, the learned trial judge entered a compulsory nonsuit and, subsequently, the court refused to take it off and the plaintiff excepted and appealed to this court.

We have given the assignments of error and the argument of appellant's learned counsel careful consideration and have reached the conclusion that the evidence offered and received and that offered and rejected did not present a case for the jury. We think the opinion òf AUDENRIED, Judge, in refusing to take off the compulsory nonsuit, sufficiently vindicates the action of the trial judge and of the court in finally refusing the plaintiff's motion to take off the nonsuit. And as that opinion appears in the report of the case, we do not deem it profitable or necessary to enter into a discussion of what seems to us satisfactory reasons in support of the judgment.

The assignments of error are all dismissed and the judgment is affirmed, at the cost of appellant.